IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60459
Summary Calendar
_____

TEREX CORP,

Plaintiff-Appellant,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW AND ITS LOCAL
1004,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(2:97-CV-243-D-B)
_____

March 23, 1999

Before KING, Chief Judge, JOLLY and DUHE', Circuit Judges.

PER CURIAM:[*]

Terex Corp. filed suit in the district court seeking a
vacatur of an arbitral award in favor of the appellee.  The
district court granted the appellee's cross-motion for summary
judgment seeking enforcement of the award, and Terex Corp.
appealed.  We affirm.

I.  FACTUAL AND PROCEDURAL BACKGROUND

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This case concerns the discharge of an employee, Michael Stump, by Terex Corp. (Terex).  On January 23, 1997, another Terex employee, Jean Hodge, complained to Terex of unwelcome sexual contact and conduct by Stump.  Terex conducted an investigation of Stump's conduct, and, on February 7, 1997, Terex terminated Stump pursuant to a collective bargaining agreement for violating an employee work rule which prohibited "[h]arassing another employee because of that employee's . . . sex."

The collective bargaining agreement between Terex and appellee International Union of United Automobile, Aerospace, Agricultural Workers of America (UAW) contained a four-step grievance procedure culminating in binding arbitration.  Ultimately, the matter was presented to an arbitrator, who, after holding a hearing during which he heard sworn testimony from numerous witnesses, issued an opinion on November 12, 1997.  The arbitrator found that Stump's conduct did not "rise to the level of sexual harassment" and concluded that Terex lacked "just cause" for the termination.  The arbitrator ordered that Stump be reinstated with full back pay and existing benefits.

Specifically, the arbitrator made the following findings (with citations to the arbitration record omitted):

> It appears of record that Hodge and the grievant were once on rather friendly terms having routinely exchanged e-mail messages of a personal nature.  But, what Hodge complains of herein is that, on January 23, ". . . (Stump) lunged towards me and grabbed me by my arms and **attempted** to kiss my neck."  (emphasis added) Hodge also complains that soon after that encounter, Stump sent to her, via computer, a "wiz-mail" reading as follows:

i wish you'd let me!!!! pleeeeeassssssssssee let me!!!!!!

to which she replied:

I DO NOT EVEN THINK SO!!!!!!

followed by another from Stump:

I 'will' get you!! and i'd appreciate your not calling me those ugly names too... Got it???

you know what you called me when i was talking about our walk..are you ready and or able to go out and play yet???

. . .

According to Hodge, following the wiz-mail she "saw him on the packing floor and told him that I did not want him to put his hands on me again . . . **he has not bothered me again**." (emphasis added) Nothing further of record transpired between Hodge and the grievant. There has been no further offensive conduct. Indeed, there is no showing that this similar encounter ever "permeated Hodge's workplace with discriminatory intimidation, ridicule, and insult . . . sufficiently sever or pervasive" to alter her conditions of employment such as to "create an abusive working environment." The grievant's conduct on January 23, 1997 was not "severe or pervasive enough to create an objectively hostile or abusive work environment . . ." such as to offend the senses of a reasonable person. In fact, it appears that following grievant's attempt to kiss her, Hodge continued to work the rest of her shift that day, and there is nothing of record showing that she ever lost any time due to the events at issue.

Referring to the U.S. Supreme Court's standard of review noted earlier [referring to <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993), and <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57 (1986)], it is observed that the grievant's action in "attempting" to kiss Hodge occurred once and was not severe, nor was it physically threatening or humiliating, and the grievant's actions have not been shown to have interfered with Hodge's work performance. "Harass" means "to disturb persistently; torment; pester; persecute; to trouble by repeated attacks." <u>Random House Webster's College Dictionary</u>, McGraw-Hill, 1991, p. 609. Here, there are no disturbingly persistent, troubling, tormenting and repetitive actions. While the grievant's lonesomely

3

aberrant behavior was aggressive, and most certainly inappropriate, it does not rise to the level of sexual harassment.

On November 25, 1997, Terex filed suit in the United States District Court for the Northern District of Mississippi seeking vacatur of the arbitration award. UAW filed a counter-claim seeking enforcement of the award. Ruling on cross-motions for summary judgment, the district judge granted summary judgment to UAW and ordered Terex to comply with the arbitrator's order. Terex timely appealed.

Terex raises three arguments on appeal. First, Terex asserts that the district court improperly considered only the facts as found by the arbitrator, and that, even assuming only the arbitrator's version of the facts, Stump's conduct constituted sexual harassment. Second, Terex argues that the arbitrator's award should be set aside as against public policy. Third, Terex argues that the district court erred in determining that the arbitrator's award drew its essence from the collective bargaining agreement, and thus that the arbitrator did not exceed his jurisdictional bounds. We consider these arguments in turn.

## II.  DISCUSSION

We review the district court's grant of summary judgment de novo. See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  FED. R. CIV. P.

56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Although we review the district court's grant of summary

judgment de novo, our review of the arbitrator's award is

extremely circumscribed.  "A court may not review the merits of

an award--it must accept the facts found by the arbitrator and

the arbitrator's interpretation of the contract and applicable

law."  Manville Forest Prods. Corp. v. United Paperworkers Int'l

Union, 831 F.2d 72, 74 (5th Cir. 1987) (citing W.R. Grace & Co.

v. Local Union 759, 461 U.S. 757, 764 (1983)).

Based on this standard of review, we have no trouble

disposing of Terex's first point of error.  Terex argues that the

arbitrator's factual findings are clearly erroneous, and that we

should adopt a different set of factual findings it insists are

"appropriate to be found from the record."  It is clear that

"[w]e may not reconsider an award based on alleged errors of fact

or law or misinterpretation of the contract."  Exxon Corp. v.

Baton Rouge Oil, 77 F.3d 850, 853 (5th Cir. 1996).  As the

Supreme Court stated in United Paperworkers International Union

v. Misco, Inc., 484 U.S. 29, 38 (1987),

> Courts thus do not sit to hear claims of factual or
> legal error by an arbitrator as an appellate court does
> in reviewing decisions of lower courts.  To resolve
> disputes about the application of a collective-
> bargaining agreement, an arbitrator must find facts and
> a court may not reject those findings simply because it
> disagrees with them.

We therefore decline Terex's invitation to review the

arbitrator's factual findings and adopt its version of the events

5

concerning Stump's termination.

As this court has noted, there are some limits to the deference we must afford an arbitrator's award. We will not enforce an arbitration award "if it stems from fraud or partiality; if it concerns a matter not subject to arbitration under the contract; if it does not 'draw its essence' from the contract; or if it violates public policy." Manville, 831 F.2d at 74 (quoting W.R. Grace, 461 U.S. at 764-65) (brackets omitted). Terex argues on appeal that two of these exceptions apply, contending that the award violates public policy and that it did not "draw its essence" from the contract.

"[A]s with any other contract, arbitration awards are subject to challenge if they violate public policy." Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A., 991 F.2d 244, 248 (5th Cir. 1993). A court's refusal to enforce an award found to be contrary to public policy is a corollary to the "'more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy.'" Id. at 248-49 (quoting Misco, 484 U.S. at 42). When reviewing whether the public policy exception applies, we must defer to the arbitrator's fact findings, but "review[] his conclusions de novo." Id. at 249.

The parties agree that "there is a public policy against sexual harassment in the workplace." However, recognition of this public policy does not require us to vacate the arbitrator's award. The public policy exception is limited to situations

where "<u>the contract as interpreted</u> would violate 'some explicit public policy' that is 'well defined and dominant.'" <u>Misco</u>, 484 U.S. at 43 (quoting <u>W.R. Grace</u>, 461 U.S. at 766) (emphasis added). The relevant question is thus whether the arbitrator's interpretation of the collective bargaining agreement explicitly conflicts with established legal precedents. See <u>id.</u>; <u>Gulf Coast Indus. Workers Union</u>, 991 F.2d at 250.

The arbitrator found that Terex lacked "just cause" in firing Stump because Stump's conduct did not rise to the level of sexual harassment. The Terex employee handbook further defined the term "sexual harassment" as

> unwelcome sexual advances, explicit or implied requests for sexual favors, and other verbal and physical conduct of a sexual nature when (1) submission to such conduct is explicitly or implicitly a term or condition of an individual's employment (2) submission to or rejection of such conduct by an individual is used as the basis for an employment decision or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating or hostile work place.

The arbitrator considered whether Stump's conduct constituted "sexual harassment," and thus whether Stump was terminated for just cause, with reference to Supreme Court case law interpreting that phrase under Title VII. As the district court noted, Terex did not allege that Stump's conduct constituted "<u>quid pro quo</u> harassment, so the application of the first two provisions of Terex's definition are inapposite here."

An employee's conduct results in a hostile work environment only when the conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an

7

intimidating, hostile, or offensive environment." Meritor Sav.
Bank, 477 U.S. at 65 (internal quotation marks omitted). Whether
an environment meets this criteria must be assessed through the
eyes of a reasonable person in the plaintiff's position, see
Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1003
(1998), and depends on the totality of the circumstances, see
Harris, 510 U.S. at 22.

Based on the facts as found by the arbitrator, we conclude
that the district court did not err in refusing to vacate the
arbitrator's award based on the public policy exception. The
arbitrator found that Stump had only "attempted" to kiss Hodge,
that the conduct giving rise to Stump's termination was an
isolated occurrence, that it was not severe or pervasive, that it
did not interfere with Hodge's work performance, and that, after
Hodge told Stump to stop, he never bothered her again. We agree
with the district court that enforcement of the arbitration
award, based on the arbitrator's interpretation of "sexual
harassment," would not violate the public policy against sexual
harassment in the workplace.

Lastly, we reject Terex's contention that the arbitrator's
award did not draw its essence from the collective bargaining
agreement and thus that the arbitrator exceeded his
jurisdictional bounds. For a decision to have drawn its essence
from the collective bargaining agreement, the award "must have a
basis that is at least rationally inferable, if not obviously
drawn, from the letter or purpose of the collective bargaining

8

agreement. . . . [T]he award must, in some logical way, be derived from the wording or purpose of the contract." Bruce Hardwood Floors v. UBC, S. Council of Indus. Workers, 103 F.3d 449, 451-52 (5th Cir.), cert. denied, 118 S. Ct. 329 (1997) (internal quotation marks omitted). As we discussed above, the arbitrator expressly considered whether Terex had just cause to terminate Stump with reference to the collective bargaining agreement between UAW and Terex, including the Terex employee handbook. We agree with the district court that it is clear that the arbitrator's award was derived in a logical way from his interpretation of "harassment" under the contract and therefore that the arbitrator did not exceed his jurisdictional bounds. We therefore affirm the district court on this ground.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.